IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SERGEY MAYOROV, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 1:13-cv-05249 |
| | ) | |
| vs. | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant*. | ) | |

**PLAINTIFF'S LOCAL RULE 56.1(a) STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois, Plaintiff Sergey Mayorov, through his attorneys, submits the following statement of material facts as to which there is no genuine issue, in support of his motion for summary judgment.

**A. Parties and Procedural Matters**

1. Plaintiff, Sergey Mayorov ("Mayorov"), is a United States Citizen who resides in Cook County, Illinois. [Def.'s Answer, Dkt. # 8, at ¶¶ 6-7].

2. Defendant is the United States of America. [Pl.'s Complaint, Dkt. # 1, at ¶ 8].

3. This court has subject matter over this jurisdiction of this action pursuant to 28 U.S.C. §§ 1346(b) and 2675. [Def.'s Answer, Dkt. # 8, at ¶¶ 3-4].

4. Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1)(B) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district and pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiff resides in the district and the defendant in the United States. [Def.'s Answer, Dkt. # 8, at ¶¶ 5-6].

5. Immigration and Customs Enforcement ("ICE")[1] officers, who issue immigration detainers, are investigative or law enforcement officers as defined by 28 U.S.C. § 2680(h). [Def.'s Answer, Dkt. # 8, at ¶ 9].

**B. Plaintiff's U.S. Citizenship**

6. Mayorov was born in Belarus on October 15, 1990. [USA RFP 000073-74, copy of birth certificate with translation from Department of Homeland Security's ("DHS") Alien File on Plaintiff; USA RFP 0000208, Mar. 8, 2011 screenshot from DHS's Central Index System (CIS) database entry regarding Plaintiff].[2]

7. Mayorov lawfully entered the United States on June 4, 1999 as the child of his asylee mother, Tanya May. [USA RFP 000062-63, copy of passport and I-94 entry form from DHS's Alien File on Plaintiff; USA RFP 0000208, Mar. 8, 2011 screenshot from Plaintiff's CIS database entry showing his designation of AS8, child of asylee; DiMaggio Dep. I, 38:15-22].

8. Mayorov became a lawful permanent resident through his mother on July 22, 2005. [USA RFP 000058-61, copy of approved application for lawful permanent residence from DHS's Alien File on Plaintiff; USA RFP000213, Mar. 8, 2011 screenshot from Plaintiff's CIS database entry regarding his lawful permanent residence; USA RFP000208, Mar. 8, 2011 screenshot from Plaintiff's CIS database entry showing his lawful "date of entry" (DOE) as July 22, 2005].

9. Mayorov's mother filed an N-400 naturalization application for U.S. citizenship on November 17, 2006. The application identified Mayorov as a dependent and that he was living with his mother. ["Mayorov Apr 21, 2104 (sic)" at 4-15, copy of Tanya May's approved N-400 application and name change request from DHS's Alien File on Plaintiff's mother].

---

[1] Immigration and Customs Enforcement is the principal investigative arm of the Department of Homeland Security.
[2] For the court's convenience, Plaintiff has provided an Exhibit Index at the conclusion of his Statement of Facts.

2

10. On March 22, 2007, Mayorov's mother naturalized to become a United States citizen. That same day, Mayorov's mother changed her name from Tatyana Mayorova to Tanya May. ["Mayorov Apr 21, 2104(sic)" at 1, copy of Tanya May's certificate of naturalization to U.S. citizenship from DHS's Alien File on Plaintiff's mother; ICE000284, June 10, 2014 screenshot from Tanya May's CIS database entry].

11. The Child Citizenship Act of 2000 ("CCA"), codified as 8 U.S.C. § 1431, provides that a child born outside of the United States automatically becomes a citizen of the United States when at least one parent of the child is a citizen of the United States (whether by birth or naturalization), the child is under the age of eighteen years, and the child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence. [Def.'s Answer, Dkt. # 8, at ¶ 10].

12. Because Mayorov was under 18 years old, a lawful permanent resident in his mother's legal and physical custody, Mayorov automatically derived U.S. citizenship through the CCA when his mother naturalized to U.S. citizenship on March 22, 2007. [Def.'s Answer, Dkt. # 8, at ¶ 10; Def.'s Resp. to Pl.'s First Requests for Admission, Request No. 5].

C. **ICE Policy Regarding Investigation of Possible U.S. Citizenship**

13. The federal government has a longstanding legal rule that it may not exercise its civil immigration enforcement authority against U.S. citizens. [Def.'s Answer, Dkt. # 8, at ¶¶ 11, 44].

14. On November 19, 2009, former ICE Director John Morton issued a policy regarding investigating individuals possible U.S. citizenship, warning ICE agents that: "As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/ or

3

detain a USC [U.S. citizen]. . . ." [hereinafter "Morton USC policy"] [Def.'s Answer, Dkt. # 8, at ¶ 11; Pl.'s Complaint, Dkt. # 1-1, Ex. A, Morton USC policy].

15. ICE Officer Giuseppe DiMaggio, who investigated Mayorov, confirmed that the Morton USC Policy applied also to investigations prior to issuance of immigration detainers. [DiMaggio Dep. I, 32:15-33:8].

16. An immigration detainer is a document by which DHS asks a state or local law enforcement agency ("LEA") to detain an individual for up to an additional 48 hours (excluding weekends and federal holidays) [accordingly up to 120 hours or 5 days] after the LEA's detention authority has expired, so that DHS can assume physical custody of the alien. [USA RFP000220, copy of immigration detainer issued against Mayorov; 8 C.F.R. § 287.7(d)].

17. The immigration detainer cites regulation 8 C.F.R. § 287.7, which states in pertinent part: "Upon a determination by the Department [DHS] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." [USA RFP000220; 8 C.F.R. §287.7(d)].

**D. Plaintiff's Plea Agreement**

18. In 2010, Mayorov was arrested for residential burglary in Cook County, Illinois. [USA RFP000222].

19. On December 27, 2010, Mayorov plead guilty with the understanding that he was eligible and would be placed in the Illinois "impact incarceration" program, a 120-day boot camp program, which, if he successfully completed, would result in his release from custody without having to serve any imposed prison sentence. [Mayorov's Plea Colloquy, dated Dec.

4

27, 2010; Mayorov Dep., 20:22-21:14; Def.'s Resp. to Pl.'s First RFAs, Requests No. 28 & 29].

20. Mayorov was sentenced to the minimum four-year sentence with a designation for boot camp. [Mayorov's Plea Colloquy, dated Dec. 27, 2010; "087014 IDOC Subpoena" at 0018].

E. **ICE's Processing of Plaintiff at Stateville Correctional Center**

21. Mayorov was processed into the Illinois Department of Corrections's ("IDOC") Stateville Correctional Center ("Stateville") on December 28, 2010. [Def.'s Am. Resp to Pl.'s First Interrogatories, Interrogatory No. 1; "087014 IDOC Subpoena" at 003, 0239].

22. Mayorov was interviewed by ICE officers, Mayra Reynoso and Jennifer Wall, as part of Stateville's processing procedures. [Reynoso Dep., 28:12-16, 31:24-33:6, 46:20-23; Wall Dep., 31:10-32:2; Mayorov Dep., 27:6-28:23].

23. The inmate log that Officers Reynoso and Wall received from Stateville officials on December 28, 2010, identified that Mayorov was designated for boot camp. [Def.'s Am. Resp. to Pl.'s First Interrogatories, Interrogatory No. 1, Ex. A; Wall Dep., 47:6-11; Reynoso Dep., 46:8-16].

24. Officers Reynoso and Wall knew that if they placed an immigration detainer on an individual the person would be disqualified from participating in boot camp. [Reynoso Dep., 44:9-46:7; Wall Dep., 46:5-15].

25. Mayorov informed the ICE officers that he was a United States citizen. [Mayorov Aff., ¶ 3; Mayorov Dep. 28:3-30:14].

26. Based on their interview with Mayorov and review of DHS database records, Officers Reynoso and Wall determined that Mayorov was the "Child of USC [U.S. citizen]" and

5

Reynoso wrote that on the inmate log next to Mayorov's name as the reason why they did not issue an immigration detainer against him. [Def.'s Am. Resp to Pl.'s First Interrogatories, Interrogatory No. 1, Ex. A; Mayorov Dep., 27:23-29:5; Reynoso Dep., 48:12-49:7; Wall Dep., 48:15-49:6].

27. Officers Reynoso and Wall testified that it was standard procedure to review DHS's CIS database system when investigating individuals at Stateville. [Reynoso Dep., 31:24-34:14; Wall Dep., 24:12-25:10].

28. Based on a review of DHS's CIS database entries for Mayorov and his mother, Officers Reynoso and Wall established that Mayorov likely derived U.S. citizenship under the Child Citizenship Act, codified at 8 U.S.C. § 1431(a), and did not issue an immigration detainer against him. [*Supra* at ¶¶ 6-12; Mayorov Dep., 27:23-28:20; Wall Dep., 48:15-49:6].

29. Neither Officer Reynoso nor Officer Wall updated the entry for Mayorov in ICE's ENFORCE database system, the agency's principal database for tracking enforcement matters, regarding the findings from their investigation of Mayorov. [Reynoso Dep., 35:23-36:17, 38:5-9, 43:8-22; Wall Dep., 37:2-38:5; DHS, "Privacy Impact Assessment for Enforcement Integrated Database (EID)," at 2 (Jan. 14, 2010), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_eid.pdf (last visited Aug. 12, 2014)].

30. Officer Wall stated that adding notes of their investigation to ENFORCE could have been saved to the system almost instantaneously. [Wall Dep., 38:6-10].

31. As of at least April 10, 2014, the ENFORCE database entry for Mayorov still lists his "country of citizenship" and place of "primary citizenship" as Belarus. [ICE000253-55].

**F. <u>Secure Communities Issues Unlawful and Improper Detainer Against Plaintiff</u>**

32. In March 2011, Giuseppe DiMaggio was an ICE officer, working at ICE's Secure Communities Processing Center. [DiMaggio Dep. I, at 7:14-22, 10:3-8; Def.'s Am. Resp. to Pl.'s First Interrogatories, Interrogatory No. 2].

33. ICE's Secure Communities Processing Center conducts immigration investigations based on fingerprints submitted from individuals booked into local jails or state prisons. [DiMaggio Dep. I, 15:23-16:7, 35:11-23; Beckman Dep., 8:23-10:7, 11:10-12:13].

34. After a query based on a fingerprint submission is received by the Secure Communities Processing Center through the TECS database system, an ICE contractor prepares a packet of information, which includes printouts of database entries from CIS, ENFORCE, and other government databases related to the individual, that an ICE officer then reviews and considers for whether to issue an immigration detainer. [USA RFP000200-222, DHS's Secure Communities Processing Center Packet for Plaintiff dated Dec. 30, 2010; Beckman Dep., 8:23-10:7, 11:10-12:13; DiMaggio Dep. I, 15:23-16:7].

35. On December 30, 2010, the Secure Communities Processing Center received a query on Mayorov's fingerprints submitted from Stateville. [USA RFP000200-222, DHS's Secure Communities Processing Center Packet for Plaintiff dated Dec. 30, 2010].

36. On March 8, 2011, over two months after receiving the Mayorov query from Stateville, ICE Contractor Jessica Beckman prepared the Secure Communities Processing Packet for ICE Officer DiMaggio's review and consideration for issuing an immigration detainer. [USA RFP000200-222, DHS's Secure Communities Processing Center Packet for Plaintiff dated Dec. 30, 2010; 37:1-17; Beckman Dep., 47:9-48:8].

37. The Secure Communities Processing Packet on Mayorov included information on: his date of birth, the date he received lawful permanent residence, evidence that he received lawful permanent residence through a parent, and at least his mother's original first name. [*Supra* at ¶¶ 6-8, USA RFP000208, 000213, DHS's Secure Communities Processing Center Packet for Plaintiff dated Dec. 30, 2010; DiMaggio Dep. II, 9:8-12:4; DiMaggio Dep. I, 37:24-39:13].

38. The Secure Communities Processing Packet also included a printout from IDOC's website, which showed that Mayorov was in the Dixon Springs Boot Camp. [USA RFP000206].

39. Based on the information contained in the Secure Communities Processing Packet, Officer DiMaggio needed only to gather information on Mayorov's mother's citizenship to determine that Mayorov automatically derived U.S. citizenship under the Child Citizenship Act, 8 U.S.C. § 1431(a). [*Supra* at ¶¶ 6-8, 10-12; USA RFP000208, 000213, DHS's Secure Communities Processing Center Packet for Plaintiff dated Dec. 30, 2010; DiMaggio Dep. II, 9:8-12:4].

40. Officer DiMaggio testified that if Mayorov's mother had naturalized to U.S. citizenship, there should be a record of it in DHS's CIS database entry for his mother. [*See* DiMaggio Dep. I, 25:22-26:3].

41. Officer DiMaggio also testified that a name search of DHS's CIS database will pick up an individual's aliases or entries for similar names. [DiMaggio Dep. II, 11:5-9; DiMaggio Dep. I, 40:24-41:13].

42. Tanya May's DHS CIS database entry states that she naturalized to U.S. citizenship on March 22, 2007 and includes her original name, Tatyana Mayorova, the same

8

name listed on Mayorov's CIS entry. [ICE000284, June 10, 2014 screenshot from Tanya May's CIS database entry; USA RFP000208, Mar. 8, 2011 screenshot from Plaintiff's CIS database entry].

43. Officer DiMaggio testified that it was not his practice to investigate a parent's citizenship prior to issuing an immigration detainer against an individual. [DiMaggio Dep. I, 23:8-18; DiMaggio Dep. II, 15:4-16:4].

44. Officer DiMaggio testified that if there was a search done of Tanya May's DHS CIS database entry a copy of it would be in the Secure Communities Packet. DiMaggio conceded that there was no printout of Tanya May's CIS entry in the packet. [DiMaggio Dep. II, 11:10-12:4; DiMaggio Dep. I, 39:23-40:14, 43:1-14].

45. Officer DiMaggio testified that he did not interview Mayorov or his mother. [DiMaggio Dep. I, 41:22-42:3, 44:12-16; DiMaggio Dep. II, 14:5-16:4; Def's Answer, Dkt. # 8, at ¶ 21; Def.'s Resp. to Pl.'s First RFAs, Requests No. 10, 13].

46. Officer DiMaggio testified that he did not review the Alien file for Mayorov or his mother. [DiMaggio Dep. I, 19:14-22, 21:19-21, 23:8-18; Def.'s Resp. to Pl.'s First RFAs, Requests No. 6-7].

47. Officers DiMaggio and Wall testified that they could have requested Mayorov or his mother's Alien file and received it in a matter of a couple weeks. [DiMaggio Dep. I, 26:17-20; Wall Dep., 36:6-37:1].

48. Officer DiMaggio did not call the National Records Center (NRC), where Mayorov and his mother's Alien files were stored, to investigate whether Mayorov may have derived U.S. citizenship. [*See* Def.'s Am. Resp. to Pl's First Interrogatories, Interrogatory No. 3].

9

49. Officer DiMaggio testified that ICE issues immigration detainers to inform state and local law enforcement that ICE has started an investigation, but that investigation does not start until the subject of the detainer is in ICE's physical custody. [DiMaggio Dep. I, 19:14-20:5, 20:24-21:3, 23:8-18; DiMaggio Dep. II, 14:5-16:4].

50. Officer DiMaggio issued an immigration detainer against Mayorov on March 16, 2011. [USA RFP000220-221, copy of immigration detainer issued against Mayorov; DiMaggio Dep. I, 48:17-48:22].

51. Officer DiMaggio justified issuing the immigration detainer against Mayorov because an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." [USA RFP000220, copy of immigration detainer issued against Mayorov; Def.'s Answer, Dkt. # 8, at ¶ 25].

52. Pursuant to 8 C.F.R. § 287.7, Officer DiMaggio asked Illinois state prison officials to detain Mayorov for up to an additional 48 hours (excluding Saturdays, Sundays and federal holidays) after state arrest and detention authority had expired, so that DHS could assume physical custody of Mayorov. [USA RFP000220, copy of immigration detainer issued against Mayorov; DiMaggio Dep. I, 49:10-13; *supra* at ¶¶ 16-17].

53. Accordingly, the immigration detainer issued against Mayorov requested state prison officials to detain Mayorov for additional time based solely for investigatory purposes. [USA RFP000220, copy of immigration detainer issued against Mayorov; DiMaggio Dep. I, 19:14-20:5, 20:24-21:3, 23:8-18; DiMaggio Dep. II, 14:5-16:4].

54. Officer DiMaggio testified that he never obtained a warrant of arrest to have Mayorov detained for immigration purposes. [DiMaggio Dep. I, 50:12-14, 28:19-21; Def.'s Resp. to Pl.'s First RFAs, Requests No. 18-19].

55. ICE did not ensure that Mayorov was served with a copy of the immigration detainer and did not provide Mayorov with a procedure to challenge the immigration detainer. [Def's Answer, Dkt. #8, at ¶ 22; Def.'s Resp. to Pl.'s First RFAs, Requests 14-16; Def.'s Am. Resp. to Pl.'s First Interrogatories, Interrogatory No. 4].

56. No ICE official performed any further investigation into Mayorov's case between March 16, 2011 (the date the immigration detainer was issued) and November 23, 2011 (the date Mayorov sought to intervene in the case *Jimenez Moreno v. Napolitano*, Case No. 11-cv-05452 (N.D. Ill.)). [Def.'s Resp. to Pl.'s First RFAs, Requests No. 30, 33-35].

### G. Plaintiff Serves 325 days in Prison Due to the Unlawful and Improper Detainer

57. Mayorov entered the Illinois "impact incarceration" program, boot camp, on January 25, 2011 and completed 52 days in the program before being disqualified on March 18, 2011 due to the immigration detainer. ["087014 IDOC Subpoena" at 0038, 0098, 0112, 0120-22; IDOC Cumulative Counseling Summary for Mayorov, entries dated "3/18/2011 07:24:18" and "3/18/2011 12:59:55"].

58. Mayorov had no disciplinary infractions through March 18, 2011 and the Notice of Termination states that the sole ground for disqualification from boot camp was the immigration detainer. ["087014 IDOC Subpoena" at 0112, 0120-22].

59. On March 18, 2011, Mayorov was handcuffed and transferred to the Vienna Correctional Center where he was held for approximately two weeks in a 24-hour lockdown segregation before being transferred to the Shawnee Correctional Center to start serving the alternative four year prison sentence. [Mayorov Aff., at ¶ 5; IDOC Cumulative Counseling Summary for Mayorov, entries dated "3/18/2011 15:25:40" (noting segregation) and "03/31/2011" 15:37:22"; "087014 IDOC Subpoena" at 003, 0239].

11

60. On March 18, 2011, Plaintiff was able to leave a voicemail for his mother, giving her the telephone number for ICE (708-449-2495), which was listed on the detainer for law enforcement communication purposes. [IDOC Cumulative Counseling Summary for Mayorov, entry dated "3/18/2011 12:59:55"; USA RFP000220, copy of immigration detainer issued against Mayorov; Tanya May Aff., at ¶ 1 and Ex. A thereto].

61. Officer DiMaggio testified that the telephone number is for ICE's Broadview Processing Center. [DiMaggio Dep. I, 64:5-11].

62. Tanya May tried to contact ICE at the telephone number (708-449-2495) included on Mayorov's immigration detainer four times (twice on March 21, 2011, and once on March 22 and 23, 2011), but nobody answered her calls. [Tanya May Aff., at ¶ 2, and Ex. B thereto].

63. Tanya May left voicemails for ICE on March 21 and 22, 2011 but no ICE official responded to her messages. [Tanya May Aff., at ¶ 3, and Ex. B thereto].

64. In a letter dated October 10, 2011, Mayorov wrote to the National Immigrant Justice Center (NIJC) for assistance with the immigration detainer because he was a U.S. citizen. [Mayorov Aff., at ¶ 7 and Ex. A thereto].

65. On November 23, 2011, Mayorov sought to intervene in the putative class action *Jimenez Moreno v. Napolitano*, Case No. 11-cv-05452, Dkt. No. 25-2, at ¶ 13 (N.D. Ill.) and placed ICE on further notice that the immigration detainer it lodged against him was causing him to serve a four year prison sentence. [Def. Answer, Dkt. # 8, at ¶ 34].

66. On or around November 28, 2011, Supervisory Detention and Deportation Officer (SDDO) Ronald Easterday, contacted the National Records Center (NRC), where Mayorov and his mother's Alien files were stored, and determined that Mayorov derived U.S.

citizenship under the Child Citizenship Act. [Def.'s Am. Resp. to Pl.'s First Interrogatories, Interrogatory No. 3; ICE000247, Email from Ronald P. Easterday to James A McPeek, dated Monday, November 28, 2011, 3:02PM].

67. ICE cancelled Mayorov's immigration detainer on November 28, 2011. [USA RFP000224-225, Mayorov's cancelled immigration detainer].

68. Despite being aware that the immigration detainer was causing Mayorov to serve a four-year prison sentence that he otherwise would not have to serve, ICE took no action after cancelling the detainer to assist Mayorov in obtaining reinstatement to the Illinois "impact incarceration" program (boot camp). [Def.'s Answer, Dkt. # 8, at ¶¶ 34, 36; Def.'s Resp. to Pl.'s First RFAs, Request No. 37; Def.'s Amended Resp. to Pl.'s First Interrogatories, Interrogatory No. 6].

69. Mayorov was reinstated to boot camp on February 6, 2012 and credited for the completed 52 days. ["087014 IDOC Subpoena," at 0079-80, 0126, 0239].

70. Mayorov completed remaining days of boot camp on April 14, 2012 and was released. ["087014 IDOC Subpoena," at 0021, 0239].

71. Had the detainer not been issued and Mayorov continued uninterrupted in the impact incarceration program, he would have completed the program and been released on or around May 25, 2011. ["087014 IDOC Subpoena," at 150].

72. The issuance of the detainer resulted in Mayorov enduring wrongful imprisonment for 325 days. [*Compare supra* ¶ 71 *with* ¶ 70].

73. The issuance of the detainer prevented Mayorov from procuring employment and earning wages for 325 days. [*Id.*; *see* Mayorov Dep., 11:13-16:22].

13

74. Mayorov suffered significant emotional distress and depression while imprisoned. [Mayorov Aff. at ¶ 13].

## EXHIBIT INDEX FOR PLAINTIFF'S STATEMENT OF FACTS

| Document | Exhibit |
| --- | --- |
| Plaintiff's Complaint | 1 |
| Defendant's Answer | 2 |
| Defendant's Amended Responses to Plaintiff's First Set of Interrogatories | 3 |
| Defendant's Responses to Plaintiff's First Set of Requests for Admission | 4 |
| DiMaggio I Deposition Transcript | 5 |
| DiMaggio II Deposition Transcript | 6 |
| Reynoso Deposition Transcript | 7 |
| Wall Deposition Transcript | 8 |
| Beckman Deposition Transcript | 9 |
| Mayorov Deposition Transcript | 10 |
| Excerpt from Plaintiff's Alien File (USA RFP000058-63, 000073-74) | 11 |
| Plaintiff's Secure Communities Processing Packet (USA RFP000200-222) | 12 |
| Screenshot from Plaintiff's ENFORCE Database Entry (ICE000253-256) | 13 |
| Excerpt from Tanya May's Alien File ("Mayorov Apr 21, 2104 (sic)" pp. 1, 4-15) | 14 |
| Screenshot from Tanya May's CIS Database Entry (ICE000284) | 15 |
| Excerpt from Stateville subpoena, bates stamped "087014 IDOC Subpoena" | 16 |
| Excerpt from Shawnee subpoena, "IDOC Cumulative Counseling Summary" | 17 |
| Email from Ronald Easterday, dated Nov. 28, 2011 3:02PM (ICE000247) | 18 |
| Plaintiff's Cancelled Immigration Detainer (USA RFP000225-226) | 19 |
| Plaintiff's Criminal Plea Colloquy, dated Dec. 27, 2010 | 20 |

Affidavit of Sergey Mayorov, dated Aug. 16, 2014     21
    Exhibit A – October 10, 2011 Letter to NIJC

Affidavit of Tanya May, dated Aug. 16, 2014     22
    Exhibit A – Scrap Paper containing notes about ICE Phone Number
    Exhibit B – Copy of March 2011 Phone Records

|  | Respectfully submitted,<br><br>By: */s/ Abiman Rajadurai*<br><br>Abiman Rajadurai ARDC# 6308091<br>LITTLER MENDELSON, P.C.<br>321 North Clark Street, Suite 1000<br>Chicago, IL  60654<br>312.372.5520<br>312.275.7110 (facsimile)<br>arajadurai@littler.com<br><br>Mark M. Fleming<br>National Immigration Justice Center<br>208 S. LaSalle Street, Suite 1300<br>Chicago, IL 60604<br>Telephone: 312-660-1628<br>Facsimile:  312-660-1505<br>Email: mfleming@heartlandalliance.org<br><br>*Attorneys for Plaintiff* |
|---|---|

15

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically and served by operation of the Court's electronic filing system, on August 18, 2014 to the parties below. Parties may access this filing through the Court's system.

**JAMES M. KUHN, SR.**
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604
James.kuhn@usdoj.gov


/s/ *Abiman Rajadurai*

Firmwide:128423244.2 850000.1997

16